IN THE UNTED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| CAMERON WOOD, )<br>)<br>PLAINTIFF )<br>)<br>VS. )<br>)<br>ARKANSAS DEPARTMENT OF )<br>CORRECTIONS, )<br>)<br>DEFENDANT ) | 1:19-CV-00081-KGB |

## AMENDED COMPLAINT

Comes the Plaintiff, Cameron Wood, by and through his attorney, Fuller Bumpers, and the Plaintiff alleges the following against the Defendant, Arkansas Department of Corrections, in his Complaint:

### I. CURRENT AMENDMENT

That the Plaintiff realleges and incorporates all previous allegations and attachments as set out in his original complaint, which are not specifically altered by this Amended Complaint. Additional Attachments are as follows:

1. ADC Employment Handbook
2. ADC AD 225 – Employee Conduct Standards
3. ADC AD 228 - Equal Employment Opportunity
4. ADC AD 228 – Employee Grievance Procedure

## II. FURTHER AMENDMENT

That the Plaintiff sent discovery requests prior to the stay of this action. That based on the Defendant's Answers to his discovery requests, the Plaintiff reserves the right to further amend his Complaint and to add necessary Defendants to this action, which could include, but not be limited to, Defendant's Agents or Employees.

## III. INTRODUCTORY STATEMENT

This is an action for a permanent injunction prohibiting Defendant from engaging in policies and practices complained of herein in violation of 42 U.S. Code § 2000e et seq., known as Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Act (EEOA) (as amended by the Civil Rights Act of 1991), and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq.; to redress Plaintiff's complaints under Arkansas law for the tort of Outrage; to award Plaintiff full back pay, retirement benefits, leave pay and/or reinstatement of leave; front pay, reimbursement for health insurance and medical expenses due to lack of health insurance, liquidated damages, damages and other benefits, costs, attorney's fees, and any and all other benefits to which he would have been entitled had he not been a victim of retaliation and for mental anguish and emotional distress resulting from the Defendant's behavior. Plaintiff also asserts a pendent claim for violation of the Arkansas Civil Rights Act and other claims as set out further in this complaint.

## IV. JURISDICTION

1. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 to secure relief authorized by 42 U.S. Code § 2000e et seq., the Civil Rights Act of 1964, as amended. Plaintiff also seeks a declaratory judgment under 28 U.S.C. § 2201 and 2202, declaring that the Defendant discriminated against him in the terms and conditions of his employment. Pendent jurisdiction is invoked under 28 U.S.C. § 136.

3. This Court's pendent jurisdiction is invoked to consider the tort of outrage, as the underlying facts supporting the tort claim are the same as the facts supporting Title VII violation, the fraud claim, and supplemental jurisdiction over other state-law causes of actions, which may arise during the litigation or are listed inside this Complaint.

4. That Venue is appropriate in the Eastern District of Arkansas, Northern Division.

## III. PROCEDURAL HISTORY

5. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

6. That the Plaintiff timely charged against the Defendant with the Equal Employment Opportunity Commission (EEOC) in March of 2019, charging Defendant with acts of discrimination through racial discrimination. A copy of the Charge of Discrimination filed is attached and marked as Exhibit A.

7. That the Plaintiff received from the US Equal Employment Opportunity Commission his notice of right to file a civil action in the appropriate court within 90 days of the date of receipt of the Notice of

Rights from the Commission. A copy of said Notice is attached and marked as Exhibit B.

8. That the Plaintiff was a victim of discrimination on the basis of his race (Caucasian), in violation of the Equal Employment Opportunity Act (EEOA)(as amended by the Civil Rights Act of 1991) and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq.

## IV. PARTIES

9. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

10. The Plaintiff is, and at all times relevant hereto, was an adult male citizen of the United States and resident of Independence County, Arkansas. Plaintiff is a protected person within the meaning of 42 U.S. Code § 2000e-2 and the Arkansas Civil Rights Act of 1993, ACA § 16-123-101. et seq.

11. At the relevant times herein, The Defendant, Arkansas Department of Corrections, was, and to the best information and belief of the Plaintiff, is an Arkansas State Government Agency doing business in Arkansas and elsewhere in interstate commerce, and has over fifteen employees. The said Defendant may be served with process by serving Wendy Kelley, Director, Arkansas Department of Correction, P.O. Box 8707, Pine Bluff, Arkansas, 71611-8707. The acts complained of herein by officials of the Arkansas Department of Correction were committed in the course and scope of the employment of such officials and their acts are imputed to the Defendant.

12. At all relevant times herein, the Defendant was an employer within the meaning of 42 U.S.C. § 2000e.
13. Whenever in this Complaint reference is made to Defendant, such allegation shall be deemed to mean the acts of the Defendant and/or its agents, acting individually, jointly, and/or severally.
14. That the Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, the Defendant and any agent of the Defendant was at all times herein mentioned, acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

## V. FACTUAL BACKGROUND

15. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.
16. That the Plaintiff was at all times relevant herein, employed as a correctional officer at the Arkansas Department of Corrections, Grimes Unit, Newport, Arkansas.
17. That the Plaintiff began working for the Defendant on or before 2001.
18. That the Plaintiff was terminated on or about November of 2018.
19. That the Plaintiff filed a charge of discrimination against the Defendant on or about May 14, 2019.
20. While the Plaintiff was engaged in his duties at the Arkansas Department of Corrections, Grimes Unit, Newport, Arkansas, the Plaintiff, within his last six months of employment, was falsely, improperly, or unfairly accused of:
    a. Section 1: Employees are expected to conduct themselves in a professional manner,

      i. Sub-section (h) – failure to report an offer of a bribe or gratuity from inmates, releases, or anyone acting on behalf of that person;

     ii. Sub-section (n) – conduct unbecoming of a public employee;

    iii. Sub-section (p) – violation of published policies

b. Section 6: Employees are expected to perform at a level commensurate with the job specifications, performance standards, and other duties as assigned.

      i. Sub-section (a) – unsatisfactory work performance

c. Section 15: Employees shall exercise reasonable and responsible care of Department equipment, materials, property and facilities. Employees must have proper approval form the appropriate supervisor for possession, misuse or abuse of equipment, vehicles, materials, property or facilities.

      i. Sub-section (a) – unauthorized possession, misuse or abuse or equipment, vehicles, materials, property or facilities

d. Section 17: Employees are to perform work assignments within their scope of their job description and follow reasonable work requests and instructions by supervisory and follow reasonable work requests and instructions by supervisors.

      i. Sub-section (b) – deliberate refusal to carry out reasonable work requests and/or instructions will be constructed as insubordinations.

e. Section 18: Employees must give clear, complete and accurate information in completing applications, work records, written

    statements/verbal information, inmate records, investigations and claims for reimbursement.

     i. Sub-section (b) – falsification of written/verbal statements/information.

  f. Section 21: Employees shall maintain a courteous and professional demeanor in their association with inmates, releasees and/or their families at all times, and shall abide by the Department's regulations concerning the relationship to be observed by employees towards inmates, releasees, and their families and/or friends.

     i. Sub-section (j) – trafficking and/or unauthorized trading

21. That Plaintiff was treated differently from African American Officers who were similarly accused of the same, similar, or more severe behavior.

22. That the Plaintiff was subjected to an Internal Affairs Investigation that was conducted by African American Officers who treated the Plaintiff differently from African American Officers who were investigated.

23. That prior to 2018, the Plaintiff had a perfect employment record.

24. That beginning in the Spring of 2018, African American employees of the Defendant created a hostile work environment for the Plaintiff and began a systematic attack and squeeze on the Plaintiff's employment with Defendant, which ended in his wrongful termination in November of 2018, six months after the Defendant's employees/agents began their actions against the Plaintiff.

25. That the Plaintiff was forced to endure harassment and/or a hostile working environment.

26. That the Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate the harassment, the hostile working environment, and the retaliation from Plaintiff's previous complaints of the Defendant's agents with the Defendant.
27. That in 2018, all of the Plaintiff's supervising officers were African American.
28. That the Plaintiff was employed for eighteen years at the Grimes Unit. In that time, he served many roles as he moved up in rank, such as Housing Sergeant, Drug Test Coordinator, Security Threat Group Coordinator, Segregation Sergeant, Building Lieutenant, Acting Building Captain, Regional Maintenance Lieutenant, Field Lieutenant, and Acting Field Major.
29. That the Plaintiff began his employment at the Grimes unit in July 2001 with the Department of Corrections.
30. That between 2001 – 2017, the Plaintiff received above-average performance evaluations and received no disciplinary actions in this time frame.
31. That in 2010, the Plaintiff was transferred to the Field Lieutenant Position, and this was the first year that the Grimes unit was awarded the Garden of the Year Award.
32. That in 2011, the Plaintiff was reassigned to Regional Maintenance where he continued until the Spring of 2018.
33. That DeAngelo Earl (African-American) was appointed Warden of the Grimes Unit in October of 2017.
34. That in the beginning of 2018, the Plaintiff received a Satisfactory Performance evaluation.

35. That in the Spring of 2018, Warden Earl reassigned the Plaintiff from the Regional Maintenance Lieutenant to Field Lieutenant with no explanation or notice of wrongdoing.
36. That the Plaintiff was replaced in his previous position by Lieutenant Harris (African American).
37. That part of the Field Lieutenant's job was to plant a 40-acre garden.
38. That upon the Plaintiff's reassignment the garden was yet unplanted and untilled. That it was extremely late in the season to plant vegetables and the garden was in poor condition.
39. That the Defendant began removing inmates from the Field Lieutenant's care and supervision, and throughout the remainder of the summer of 2018, there were no inmates apportioned by the Warden or the Plaintiff's supervisors to aid him in the care or his duties.
40. That prior to his appointment inmates had been used to drive tractors, prepare and maintain the garden (40 acres), help with the K-9 unit, the Institutional Car Care garage, the outside grounds, the horse barn, and other related requirements of the Plaintiff's position.
41. That the Plaintiff discussed his inability to competently complete his job on numerous occasions with the Warden, but his requests were ignored.
42. That due to the Warden's inactions, the Plaintiff was required to, by himself, provide the labor that was normally performed and expected to be done by numerous inmates, such as, but not limited to bush hogging, the entire process of gathering hay, shoeing the horses, mowing, moving Polly pipe, mechanic work, tractor driving, planting the garden, and more.

43. That in July of 2018, Major Maurice Culclager (African-American Officer) had an altercation with an inmate and used force on the inmate. He was investigated, but not disciplined.
44. That officers supervised by the Plaintiff wrote statements against Major M. Culclager, and the Major began to retaliate against the field staff and the Plaintiff.
45. Major M. Culclager changed policies to make the Plaintiff's employment more difficult.
46. Major M. Culclager became verbally aggressive with the Plaintiff when discussing the matter on two occasions; the Plaintiff verbally defended his position.
47. That Major M. Culclager issued two written disciplinary actions for the words exchanged by the men during the exchanges, and the Warden approved his actions.
48. That these were the first disciplinary actions issued to the Plaintiff, and for which he had notice.
49. That the Plaintiff received a verbal warning and a written reprimand.
50. That Major M. Culclager was not disciplined.
51. That Major M. Culclager took advantage of his position to punish the Plaintiff.
52. That the Warden consented to these actions or at a minimum, failed to prevent them.
53. That in July of 2018, Mr. Farbough (Arkansas Department of Corrections Farm Supervisor) visited the Grimes Unit, and had concerns about the lack of inmate help in the Plaintiff's area of the Unit.

54. That the Plaintiff told Mr. Farbough, a man in a supervisory position to the Warden, that the Warden was the cause of the failure of the gardens.
55. That Mr. Farbough sent an email to Warden Earl and other staff explaining the need for inmate help in order to produce a better garden for the Grimes unit.
56. That the Plaintiff and his staff provided names of inmates to the Warden that had the farming experience, but Warden Earl failed to act on the requests of Mr. Farbough, the Plaintiff, and his staff.
57. At the end of October of 2018, Mr. Farbough returned to the Grimes unit and discovered that inmates had not been appointed to the Plaintiff, and a Fall Garden had not been planted.
58. That the Plaintiff told Mr. Farbough, a man in a supervisory position to the Warden, that the Warden was again the cause of the failure of the gardens.
59. That Mr. Farbough requested that the Plaintiff attend a meeting that he would call and explain the Warden's inactions in regard to the gardens, and the Plaintiff agreed.
60. That Mr. Farbough sent a second email to Warden Earl and also the assistant Directors requesting a meeting be held at the Grimes unit at the end of November to address his concerns and why the Grimes garden was not being maintained efficiently.
61. That if the Plaintiff was available to discuss the Warden's inactions, his testimony could have adversely affected the career and employment of the Warden.
62. On November 5, 2018, the Plaintiff was advised to clock out for the day and report to Internal Affairs.

63. On November 9, 2018, the Plaintiff was interviewed by investigator Thomas Rowland (African American) about allegations of providing tobacco to inmates for money. That one of the inmates was Johnny Light, and Mr. Light wrote an affidavit against the Plaintiff.

64. Mr. Rowland performed a CVSA exam. Following the exam, he informed the Plaintiff there was deception shown in his answers.

65. That Inmate Johnny Light had just failed a drug test for THC and was required to be reprimanded. That a reprimand could mean up to another year in prison for Inmate Light.

66. That Warden Earl explained to Inmate Light that if he would write an affidavit against the Plaintiff setting out that he provided tobacco to inmates for money, he would not discipline him, thus saving him up to the extra year in prison. The inmate agreed to fabricate his affidavit based on Warden Earl's promise.

67. That Inmate Light fabricated the affidavit under duress.

68. Mr. Light called Mr. Rowland and Warden Earl as two of his only three witnesses at his disciplinary hearing for the failed drug test.

69. On November 14, 2018, days before the meeting to discuss the neglect of the garden operations, the Plaintiff was terminated and was unable to attend the meeting.

70. At the Plaintiff's first grievance hearing, he was notified for the first time that his reassignment from Regional Maintenance Lieutenant to Field Lieutenant was because contraband was found at a work site and on the inmate bus.

71. That under Lieutenant Harris (African American), the Plaintiff's replacement as Regional Maintenance Lieutenant, similar contraband was found, but no disciplinary action was taken.

72. Further, similar, or more severe infractions occurred during Lieutenant Harris's watch but no disciplinary action was taken, such as but not limited to the loss of a loaded weapon and a vehicle running out of oil, which cost the Defendant thousands of dollars for a replacement engine.

73. That even though Lieutenant Harris's duties and the Plaintiff's were similar, the Plaintiff was required by the Warden and his Supervisors to handle more duties, which prevented him from properly completing tasks required of his employment.

## VI. VIOLATIONS OF TITLE VII, 1964 CIVIL RIGHTS ACT

74. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

75. That the Defendant's actions as outlined above constitute racial harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

76. That the Defendant, by and through his employees and agents, discriminated against and harassed the Plaintiff because of his race (Caucasian).

77. That the intentional harassment of the Plaintiff and the aforementioned retaliation coupled with the failure of the Defendant to adequately remedy the situation, despite knowledge thereof, subjected the Plaintiff to a hostile working environment, detrimentally affecting the working conditions of the Plaintiff and would have detrimentally affected a reasonable person in Plaintiff's person.

78. That the Defendant knew or should have known of the hostile atmosphere, the racial discrimination, and the harassment to which the

    Plaintiff was subjected, and they failed to take effective remedial action.

79. That the Plaintiff was required to endure the offensive conduct of the Defendant as a condition of continued employment.

80. That the Defendant's conduct was severe and pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, and/or abusive.

81. That the Plaintiff was terminated due to alleged conduct for which similarly situated African American officers had not been disciplined or terminated.

82. That the Plaintiff was terminated due to alleged conduct for which similarly situated African American officers had not been disciplined or terminated.

## VII. VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT – STATE PENDENT CLAIMS

83. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

84. That the Defendant's actions as outlined above were so outrageous that such actions should not be tolerated by civilized society.

85. That the Defendant's actions were at all times willful, wanton, and outrageous, and were made with the deliberate intention of causing the Plaintiff severe emotional distress and loss of livelihood, or were made when the Defendant knew or should have known that the actions would have had such effect.

86. The acts and omissions alleged herein are in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq.; in

that the Plaintiff was subjected to discrimination in the terms and conditions of his employment based upon his race (Caucasian), harassment and retaliation, for which he seeks the relief set forth in this Complaint.

## VIII. FRAUD

87. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.
88. That the Defendant made a false representation with knowledge and belief that the representation was false and/or that there is insufficient evidence upon which to make the representation, with intent to induce action in reliance upon the representation.
89. That the Defendant induced an inmate to make false representations for which the direct result was the termination of the Plaintiff.
90. That other employees and/or agents justifiably relied upon the induced and fraudulent representation of the inmate, and the Plaintiff suffered damages as a result of that reliance.
91. That the Defendant, by and through its employees and/or agents, retaliated against the Plaintiff for participating in an investigation against the Defendant's employees and/or agents.
92. That a principal can be held vicariously liable for the acts of its managerial agents.
93. That the Defendant took materially adverse actions against the Plaintiff.
94. That the Plaintiff suffered damages because of the Defendant's actions.

## IX. BREACH OF GOOD FAITH AND FAIR DEALING

95. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

96. That the Plaintiff had an expectation of a fixed term of employment and certain protections based on the Defendant's practice of only firing employees for cause and the grievance procedures, and other procedures as set out in the employee handbook.

97. That the Defendant terminated the Plaintiff in bad faith.

98. That the Defendant terminated the Plaintiff motivated by malice.

99. That the Defendant breached the duty of good faith and fair dealing with the Plaintiff.

## X. INTENTIONAL INTERFERENCE WITH THE EMPLOYMENT CONTRACT

100. That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

101. That the Defendant intentionally and improperly interfered with the performance of the employment contract of the Plaintiff by inducing or otherwise causing the Plaintiff not to be able to perform the contract.

102. That the parties had an existing contractual relationship;

103. That the Defendant had knowledge of this relationship;

104. That the Defendant intentionally interfered with the Defendant's performance of the contract causing a breach or termination of the relationship;

105. That the Defendant's suffered damages as a result of the Defendant's actions.

## XI. DAMAGES

**106.** That the Plaintiff incorporates by reference all allegations contained in the preceding paragraphs.

**107.** Under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 to secure relief authorized by 42 U.S. Code § 2000e et seq., the Civil Rights Act of 1964, as amended. Plaintiff also seeks a declaratory judgment under 28 U.S.C. § 2201 and 22002, declaring that the Defendant discriminated against him in the terms and conditions of his employment. Pendent jurisdiction is invoked under 28 U.S.C. § 136.

**108.** That the Plaintiff's damages as pleaded exceed $75,000.00.

**109.** That the Plaintiff seeks all remedies allowed by the applicable anti-retaliation law, as specified above.

**110.** As a direct and proximate result of the Defendant's conduct, the Plaintiff suffered compensatory and non-compensatory damages in an amount in excess of the minimum amount for federal diversity jurisdiction, to be determined by a jury, for the following elements:

   a. Past and future emotional distress, embarrassment, and humiliation;
   b. Past and future extreme mental anguish, distress, and anxiety;
   c. Past and future pain and suffering;
   d. Past and future loss of quality of life;
   e. Past and future loss of enjoyment of life;
   f. Damages to reputation;
   g. Loss of advancement in his job;
   h. Loss of employment and income;
   i. Loss of benefits resulting from loss of employment;
   j. Damage to physical health and well-being;

      k. Damage to mental health and well-being;

      l. Damages due to retaliation;

      m. Past loss of leave time for sickness and medical treatment;

      n. Past and future medical expenses; and/or

      o. Past and future travel expenses for medical treatment; for all of which he should be compensated.

111. That Defendant's actions were at all time willful, wanton, and outrageous, and were made with the deliberate intention of causing Plaintiff severe emotional distress, or were made when the Defendant knew or should have known that the actions would have such an effect.

112. That the Defendant's actions were committed and made with knowledge of the harm to the Plaintiff that would ensue and with reckless disregard of the harm that would be inflicted upon the Plaintiff.

**WHEREFORE,** the Plaintiff, Cameron Wood, prays that this Court grant him the following relief against the Defendant under applicable law, that he be granted a jury trial; that he be granted a Declaratory Judgment declaring that the Defendant has violated the rights of the Plaintiff, Cameron Wood, as guaranteed by Title VII of the Civil Rights Act of 1964, as amended, due to race; Retaliation; and the Arkansas Civil Rights Law; that he be awarded loss of employment compensation; that he be awarded back-pay; that he be awarded benefits and promotional opportunities, past, present, and reasonably certain to be missed in the future because of the actions of the Defendant; that he receive payment for loss of reputation and self-esteem; that he be awarded damages for mental anguish and emotional distress; that he be awarded compensatory and punitive damages up to

the limits allowed by law for violation(s) of Title VII and the Arkansas Civil Rights Law; for leave to amend after discovery; a jury trial; that he be awarded costs, litigation expenses, and a reasonable attorney's fee; and, for all other just and proper relief that this Court may deem appropriate.

                Respectfully Submitted,

                _/s/ Fuller Bumpers_
                Fuller Bumpers
                Ark. Bar No. 2006173
                Attorney at Law
                P.O. Box 2496
                Batesville, AR  72503
                (870) 793-7556
                fullerbumpersoffice@gmail.com

## DEMAND FOR JURY TRIAL

    COMES Cameron Wood and, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands its right of trial by jury as to all issues so triable.

                Respectfully Submitted,

                _/s/ Fuller Bumpers_
                Fuller Bumpers
                Ark. Bar No. 2006173
                Attorney at Law
                P.O. Box 2496
                Batesville, AR  72503
                (870) 793-7556
                fullerbumpersoffice@gmail.com